No. 26-2491 (L); No. 26-2595

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

STATE OF ILLINOIS, et al.,

*Plaintiffs-Appellees*,

and

AMERICAN FEDERATION OF TEACHERS,

*Plaintiff-Intervenor-Appellee*,

and

AMERICAN ASSOCIATION OF MOTOR VEHICLE ADMINISTRATORS,

*Defendant-Appellee*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia, No. 1:26-CV-02547-AJT-IDD

# APPELLEE AMERICAN FEDERATION OF TEACHERS' OPPOSITION TO MOTION FOR STAY PENDING APPEAL

Mark Hanna
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005

Adam R. Pulver
Nandan M. Joshi
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Appellee AFT*

November 11, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

I. The Commercial Driver's License Information System .......... 3

II. FMCSA's data demand of AAMVA .......... 5

III. District court proceedings .......... 7

A. The States' claims and the preliminary injunction .......... 7

B. AFT's intervention and the section 705 stay .......... 8

ARGUMENT .......... 9

I. FMCSA has not complied with Rule 8(a) as to the section 705 stay. .......... 9

II. FMCSA has not made a strong showing that it is likely to succeed on the merits. .......... 11

A. FMCSA is not likely to prevail on its jursidictional arguments. .......... 12

B. FMCSA is not likely to prevail on its merits arguments. 18

III. FMCSA is not likely to suffer irreparable harm. .......... 25

IV. The equities weigh against a stay. .......... 25

CONCLUSION .......... 26

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*,
172 F.4th 361 (4th Cir. 2026) .......... 17, 18

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 12

*Blitz v. Napolitano*,
700 F.3d 733 (4th Cir. 2012) .......... 15

*Brake Plus NWA, Inc. v. U.S. Department of Transportation*,
176 F.4th 1037 (8th Cir. 2026) .......... 13

*Ciba-Geigy v. U.S. Environmental Protection Agency*,
801 F.2d 430 (D.C. Cir. 1986) .......... 13

*City of Alexandria v. Helms*,
728 F.2d 643 (4th Cir. 1984) .......... 15, 16

*CSI Aviation Services, Inc. v. U.S. Department of Transportation*,
637 F.3d 408 (D.C. Cir. 2011) .......... 13

*Dow AgroSciences LLC v. National Marine Fisheries Service*,
707 F.3d 462 (4th Cir. 2013) .......... 20

*Equity in Athletics, Inc. v. Department of Education*,
639 F.3d 91 (4th Cir. 2011) .......... 17

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) .......... 18

*Gaston v. LexisNexis Risk Solutions, Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) .......... 21, 22

*Jake's Fireworks Inc. v. Consumer Product Safety Commission*,
105 F.4th 627 (4th Cir. 2024) .................................................. 13, 14

*McClatchy Co. v. Town of Chapel Hill*,
657 F. Supp. 3d 769 (M.D.N.C. 2023) ............................................ 21

*McMichael v. James Island Charter School*,
840 F. App'x 723 (4th Cir. 2020) .................................................... 19

*Nken v. Holder*,
556 U.S. 418 (2003) ........................................................................ 9, 11

*PFLAG, Inc. v. Trump*,
No. 25-1279, 2026 WL 1429738 (4th Cir. May 21, 2026) .............. 10

*Rhone v. City of Texas City*,
No. 22-40551, 2022 WL 4310058 (5th Cir. Sept. 19, 2022) ........... 11

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983) ........................................................................... 9

*Securities & Exchange Commission v. Dunlap*,
253 F.3d 768 (4th Cir. 2001) ............................................................ 11

*Senne v. Village of Palatine*,
605 F.3d 597 (7th Cir. 2012) ............................................................ 19

*Soundboard Ass'n v. Federal Trade Commission*,
888 F.3d 1261 (D.C. Cir. 2018) ........................................................ 14

*U.S. West Communications, Inc. v. Hamilton*,
224 F.3d 1049 (9th Cir. 2000) .......................................................... 15

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) ............................................ 22

*Weaver v. Federal Motor Carrier Safety Administration*,
744 F.3d 142 (D.C. Cir. 2014) ............................................. 14, 15, 16

**Statutes**

5 U.S.C. § 551 .......... 14

5 U.S.C. § 552a .......... 4, 5, 6

5 U.S.C. § 552a(e)(1) .......... 21, 23

5 U.S.C. § 552a(e)(11) .......... 23

5 U.S.C. § 704 .......... 15

5 U.S.C. § 705 .......... 2, 8, 9, 10

18 U.S.C. § 2721(b)(1) .......... 19, 20

28 U.S.C. § 2342(3) .......... 14, 15

28 U.S.C. § 2342(3)(A) .......... 14

49 U.S.C. § 31302 .......... 3

49 U.S.C. § 31309(b)(1) .......... 4

49 U.S.C. § 31311(a)(6) .......... 3

49 U.S.C. § 31311(a)(6) .......... 3

**Federal Rules**

Federal Rule of Appellate Procedure 8(a) .......... 9, 10

**Regulatory Materials**

49 C.F.R. § 501.8(d)(5) .......... 14

Federal Motor Carrier Safety Administration, Commercial Driver's License Information System State Procedures Manual, Release 5.2.0,
76 Fed. Reg. 68328 (Nov. 4, 2011) .......... 4

Federal Motor Carrier Safety Administration, Notice, Privacy Act of 1974: System of Records,
71 Fed. Reg. 35727 (June 21, 2006) .......... 22

Federal Motor Carrier Safety Administration, Policy on Availability of Information from the Commercial Driver's License Information System, 70 Fed. Reg. 2455 (Jan. 13, 2005) .......... 17, 24

Federal Motor Carrier Safety Administration, Privacy Impact Assessment for Commercial Driver's License Information System (CDLIS)-Gateway (Jan. 11, 2011) .......... 5, 17

**Other Authorities**

S. Rep. No. 99-411 .......... 3

Texas Department of Public Safety, CDL-1 – Texas Commercial Driver License Application .......... 25, 26

## INTRODUCTION

Since 1988, the American Association of Motor Vehicle Administrators (AAMVA) has maintained a database of state-owned and state-provided data about every applicant for a commercial drivers' license, known as the Commercial Driver's License Information System (CDLIS). Over the last 38 years, the federal government has repeatedly recognized that the CDLIS is *not* a federal records system, and the federal government's access to the CDLIS has been limited to individual queries of specific drivers' records for purposes consistent with the Driver's Privacy Protection Act (DPPA).

This summer, though, the Federal Motor Carrier Safety Administration (FMCSA) demanded that AAMVA turn over five years' worth of records on 17 million drivers—including drivers who are members of Plaintiff-Intervenor-Appellee American Federation of Teachers (AFT)—for vague purposes including immigration enforcement. FMCSA asserted that AAMVA was required as a matter of law to turn over those records immediately or suffer consequences.

Concluding that FMCSA's Data Demand likely runs afoul of multiple statutory provisions and is arbitrary and capricious, the district

court granted the Plaintiff States' motion for a preliminary injunction and then granted AFT's motion for a stay of the Data Demand pursuant to 5 U.S.C. § 705. In thus maintaining while the litigation proceeds the status quo that has existed for nearly 40 years, the court recognized that the demand was likely unlawful and that FMCSA had not shown how the *en masse* turnover of every CDL applicant's private information was relevant to FMCSA's statutory authority to protect highway safety.

Now, without even attempting to show any urgency, FMCSA has run to this Court less than 48 hours after asking the district court for a stay pending appeal of its section 705 stay (and without asking the district court for expedition). Its request for the extraordinary relief of a stay pending appeal rests on cursory claims of irreparable harm that ignore the district court's findings and asks this Court to ignore FMCSA's admission that it intends to use the requested records as an immigration enforcement tool. Given the heavy burden to show both a likelihood of success on the merits and that the equities weigh in its favor, FMCSA has not shown that it is entitled to a stay of either the preliminary injunction or the section 705 stay.

## BACKGROUND

### I. The Commercial Driver's License Information System

The Commercial Motor Vehicle Safety Act (CMVSA) prohibits any individual from operating a commercial motor vehicle without a valid CDL and from having more than one driver's license. 49 U.S.C. § 31302. It was designed to prevent "the practice of multiple license use by commercial drivers," which allowed them to "spread their traffic violations over a number of licenses and maintain a 'good driver' rating regardless of the number of violations." S. Rep. No. 99-411, at 3 (1986). A state may thus issue a CDL "to an individual who has a commercial driver's license issued by another State only if the individual first returns the driver's license issued by the other State," and may not issue a CDL until the state has "request[ed] from any other State that has issued a driver's license to the individual all information about the driving record of the individual." 49 U.S.C. § 31311(a)(6), (11).

The statute requires the Secretary to maintain a clearinghouse, the CDLIS, to facilitate this exchange of information. *Id.* § 31309(a). Operated by AAMVA since 1988, the CDLIS contains records on CDL holders called "pointer" records (Master Pointer Records, or MPRs)

because they use the driver's personal information to "point" a user to additional information about the driver contained in state motor vehicle databases. *See* Commercial Driver's License Information System State Procedures Manual, Release 5.2.0, 76 Fed. Reg. 68328, 68329 (Nov. 4, 2011); Collier Decl., Dkt. 85-2 ¶ 10; see AAMVA Products & Services Catalog, Dkt. 1-3 at 29. MPRs contain "the name, address, and physical description of the operator," the "social security account number of the operator or other number or information the Secretary considers appropriate to identify the operator," 49 U.S.C. § 31309(b)(1), and the operator's date of birth and driver's license number, *see* Collier Decl., Dkt. 85-2 ¶ 10.

FMCSA has long taken the position that CDLIS records are not federal records but records "created and maintained by the States," and thus that the CDLIS is not a federal system of records subject to the Privacy Act, 5 U.S.C. § 552a. CDLIS Manual, 76 Fed. Reg. at 68332. Federal personnel access to the CDLIS has thus been limited: they have only been able to conduct "individual quer[ies]" of particular drivers they can identify by name. Add.75–76. "Only personnel with a specific need to know are authorized to access information concerning CDL drivers," and

such "personnel must also meet the requirements of the [DPPA] to access CDLIS driver records." FMCSA, PIA-Commercial Driver's License Information System (CDLIS)-Gateway, (Jan. 11, 2011) (2011 PIA), https://www.transportation.gov/individuals/privacy/pia-commercial-drivers-license-information-system-cdlis-gateway.

## II. FMCSA's data demand of AAMVA

On June 25, 2026, FMCSA requested AAMVA turn over every pointer record within the CDLIS for the last five years. Add.7. Over the next six weeks, FMCSA and AAMVA exchanged letters about and met in person to discuss that request—particularly with respect to AAMVA's concerns that complying with it would violate state and federal laws, including the DPPA and the Privacy Act, and as to whether the request was authorized under the Cooperative Agreement that governs the CDLIS. *See, e.g.*, Add.8–9.

Meanwhile, the Department of Homeland Security (DHS) served an administrative subpoena upon AAMVA, seeking the same information requested by FMCSA. Add.19. The subpoena sought the records "in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws." *Id.* "FMCSA staff separately indicated via

email that FMCSA and DHS had coordinated on their data demands and that the subpoena would be withdrawn due to AAMVA's efforts to cooperate with FMCSA." *Id.* After it became clear that FMCSA was seeking the data for information purposes, "more than twenty jurisdictions had formally objected to AAMVA's proposed production of" CDLIS data, and AAMVA indicated it was continuing to evaluate whether and how to do so. *Id.*

On August 11, 2026, FMCSA sent a final Data Demand to AAMVA, asserting that AAMVA's position was "unacceptable." Add.26. FMCSA stated, contrary to its prior position, that CDLIS data was "not 'state data,'" that "[s]tates have no veto over the production of records that AAMVA is holding on DOT's behalf," and, for the first time, that the records were "urgently needed for the federal government to help prevent fatal trucking accidents." *Id.* FMCSA demanded that AAMVA provide DOT with the MPRs by August 17, 2026, and stated that, if it did not, "DOT w[ould] pursue all available options to secure production, including canceling AAMVA's grants, filing an enforcement action to enforce the [DHS] subpoena, and considering terminating its contract with AAMVA." *Id.*

## III. District court proceedings

### A. The States' claims and the preliminary injunction

On August 13, 2026, twenty-one states and the District of Columbia commenced this action against the Department of Transportation, Secretary Duffy, FMCSA, and Administrator Barr (hereafter, collectively FMCSA), as well as AAMVA, asserting that the Data Demand violated the consultation requirement of the CMVSA, was contrary to provisions of the DPPA and Privacy Act, exceeded FMCSA's statutory authority, was arbitrary and capricious, and was inconsistent with the Spending Clause. Dkt. 1, ¶¶ 137–98. In addition, four States raised a claim against AAMVA asserting that compliance with the Data Demand would violate contractual terms. *Id.* ¶¶ 199–205.

Along with their complaint, the Plaintiff States filed a motion for a temporary restraining order (TRO), which the district court granted on August 20, 2026. *See* Add.54. The Plaintiff States then moved for a preliminary injunction, which the court granted on September 17, 2026. Add.83. On October 8, 2026, FMCSA noticed an appeal from the preliminary injunction, Dkt. 134, and moved for a stay pending appeal,

Dkt. 135. The district court denied that motion on October 30, 2026. Add.105.

### B. AFT's intervention and the section 705 stay

AFT is a national labor union representing approximately 1.875 million members—including approximately 11,000 workers in the U.S. transportation industry, including school bus drivers and maintenance drivers, in fifteen states. AFT moved to intervene in this action as a matter of right under Federal Rule of Civil Procedure 24(a) or, alternatively, for permissive intervention under Rule 24(b). Dkt. 91. AFT's complaint in intervention includes three claims under the Administrative Procedure Act (APA): (1) that the Data Demand is not in accordance with the DPPA; (2) that the Data Demand is not in accordance with the Privacy Act, and (3) that the Data Demand is arbitrary and capricious. Dkt. 115, ¶¶ 47–63. On September 21, 2026, the district court granted AFT permissive intervention. Dkt. 114.

On October 8, 2026, AFT moved for a stay of the Data Demand pursuant to 5 U.S.C. § 705. Dkt. 131. The Court granted that motion on October 30, 2026, and stayed the Data Demand in its entirety pending resolution of the litigation. Add.108.

FMCSA noticed an appeal from the section 705 order, Dkt. 162, and four days later, moved the district court for a stay of that order pending appeal. Dkt. 166. FMCSA did not seek expedition of its motion, and AFT's response is due on November 17, 2026. *See* E.D. Va. L.R. 7(F)(1).

## ARGUMENT

A stay pending appeal is merited "only under extraordinary circumstances," and a party seeking such a stay "must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). FMCSA has not met that burden here: It has failed to comply with the requirements of Rule 8 as to the section 705 stay, and it has not established any of the four governing factors weigh in its favor as to either the preliminary injunction or the stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2003).

### I. FMCSA has not complied with Rule 8(a) as to the section 705 stay.

Under Federal Rule of Appellate Procedure 8(a), a party "must ordinarily move first in the district court" before seeking a stay pending

appeal in the court of appeals. Fed. R. App. P. 8(a)(1). A stay motion in this Court "must (i) show that moving first in the district court would be impracticable; or (ii) state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. R. App. P. 8(a)(2).

Here, FMCSA moved to stay the section 705 order on November 3, and AFT's response to that motion is due November 17. Despite failing to ask the district court to expedite decision of its motion, or otherwise expressing any urgency to the district court, FMCSA nonetheless came to this Court less than 48 hours later, treating the short passage of time without a ruling as a constructive denial. *Cf. PFLAG, Inc. v. Trump,* No. 25-1279, 2026 WL 1429738, at *4 (4th Cir. May 21, 2026) (Benjamin, J., concurring) (noting that courts have found that a movant need not await a district court's decision if "a matter of weeks" has passed). FMCSA's premature filing created the odd situation where AFT's response to the motion to stay pending appeal in this Court is due *before* its response to FMCSA's motion in the district court—a situation that runs counter to the entire purpose of Rule 8(a)(1).

Notably, nothing in FMCSA's motion indicates that any urgency necessitated this half-skip over the district court. Indeed, FMCSA waited 21 days after the district court issued the preliminary injunction to move the district court for a stay, and it did not move for a stay in this Court until after that motion was decided weeks later. The Court may thus deny FMCSA's motion as to the 705 stay as premature. *See Rhone v. City of Texas City*, No. 22-40551, 2022 WL 4310058, at *1 (5th Cir. Sept. 19, 2022) (denying motion without prejudice under analogous circumstances); *cf. SEC v. Dunlap,* 253 F.3d 768, 774 (4th Cir. 2001) (denying motion for stay without prejudice where movant "failed to satisfy the requirements of Rule 8").

## II. FMCSA has not made a strong showing that it is likely to succeed on the merits.

To obtain a stay pending appeal, a movant must go beyond establishing "a mere possibility" of success on appeal; rather, it must make a "strong showing" that it is likely to succeed. *Nken*, 556 U.S. at 434. FMCSA has not cleared that high bar.

### A. FMCSA is not likely to prevail on its jurisdictional arguments.

FMCSA raises three jurisdictional arguments, only two of which it raised in the district court. It is not likely to prevail on any of them.

**1.** FMCSA first argues that the August 11 Letter demanding AAMVA turn over the MPRs or face, in the words of that letter, "immediate action," Add.26, was not final agency action. As the district court twice concluded, however, that Data Demand satisfies the standard for finality set out in *Bennett v. Spear*, 520 U.S. 154 (1997). *See* Add.59–60; Add.85–89. The letter "mark[s] the consummation of the agency's decisionmaking process" and is not "tentative or interlocutory." *Bennett*, 520 U.S. at 178. The demand that AAMVA turn over the MPRs was a final, considered one, and the agency was clear that it would not continue negotiating. To the contrary, the letter states that, given AAMVA's decision, "DOT has no choice but to take immediate action to secure the production of the requested pointer records," unless AAMVA "reconsider[ed] its position." Add.26–27.

The letter was also one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted). The letter reflected

FMCSA's (erroneous) determination that AAMVA had an "obligation to produce DOT's own records to DOT," and that a failure to comply with that supposed obligation would result in "immediate action." Add.26–27. This "definitive statement of the agency's legal position" and demand that AAMVA comply is similar to other letters courts have found to constitute final agency action. *See CSI Aviation Servs., Inc. v. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011); *see also Brake Plus NWA, Inc. v. Dep't of Transp.*, 176 F.4th 1037, 1041–44 (8th Cir. 2026) (holding that similar letter issued by NHTSA Chief Counsel constituted final agency action); *Ciba-Geigy v. EPA*, 801 F.2d 430, 436–37 (D.C. Cir. 1986) (concluding that agency official's letter stating agency's position and threatening enforcement action constituted final agency action). Like the letters at issue in those cases, in this case, "[n]ot only did [FMCSA's] statement of position admit of no ambiguity, but it gave no indication that it was subject to further agency consideration or possible modification." *Ciba-Geigy*, 801 F.2d at 436–37.

FMCSA argues that *Jake's Fireworks Inc. v. CPSC*, 105 F.4th 627 (4th Cir. 2024), compels a different conclusion. The non-compliance notice at issue there, however, failed to meet the "consummation"

requirement of *Bennett*, because it was issued by an office with only "advisory and investigatory functions," by staff without "the power to make a final determination as to whether a violation has occurred and whether to pursue enforcement." *Id.* at 631–32. Because they could only make recommendations to the ultimate decisionmakers, the notice was not "properly attributable to the agency itself." *Id.* at 631 (quoting *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018)). The Data Demand, by contrast, states FMCSA's final conclusion that AAMVA has an obligation to provide the requested data and states that the agency will "take immediate action" based on AAMVA's failure to comply. Add.26. Further, the letter was sent by FMCSA's Chief Counsel, who by regulation, has the power to issue such an "authoritative interpretation" of the relevant laws. 49 C.F.R. § 501.8(d)(5).

**2.** FMCSA next argues that the Hobbs Act, 28 U.S.C. § 2342(3)(A), provides exclusive jurisdiction for this action in the courts of appeals. That section, however, applies only to "rules, regulations, or final orders" of the Secretary of Transportation. 28 U.S.C. § 2342(3). While FMCSA asserts that the Data Demand "must fall into the APA's residual category of orders," Motion 13 (citing provisions of 5 U.S.C. § 551), the relevant

question is not whether the demand is an order under the *APA*, but whether it is an order under the *Hobbs Act*. The D.C. Circuit's decision in *Weaver v. FMCSA*, 744 F.3d 142 (D.C. Cir. 2014), is the only court of appeals decision to address what kinds of DOT actions constitute "final orders" under section 2342(3).[1] There, the court rejected the argument that "any activity" taken under one of the statutes listed in section 2342(3) "that qualifies as a 'final agency action' under 5 U.S.C. § 704 also constitutes a 'final order' (if it is not a 'rule' or 'regulation') under § 2342(3)." *Weaver*, 744 F.3d at 146. Rather, the court concluded that the statute "appears to contemplate 'actions' of the Secretary under the named statutes that are *not* rules, regulations or final orders, i.e., a residue of agency activity subject to initial review in the district court." *Id.* Whether an action is an "order" or falls within that "residue," the court concluded, turns on whether the agency "compiled a record with an eye toward judicial review." *Id.* at 147. This test is the same one that this

[1] The government includes an out-of-context quote from a decision in which the Ninth Circuit held that the same test for *finality* of agency action applies under the Hobbs Act and the APA. *See* Motion 13 (quoting *U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000)). As the D.C. Circuit explained, the two statutes "[b]eing equivalent for the purposes of finality, however, does not make them equivalent in all respects." *Weaver*, 744 F.3d at 146.

Court uses to determine whether an action is an "order" under other statutes that provide original jurisdiction in the courts of appeals. *See Blitz v. Napolitano*, 700 F.3d 733, 739 (4th Cir. 2012); *City of Alexandria v. Helms*, 728 F.2d 643, 646 (4th Cir. 1984). And while FMCSA asserts that "the August 11 letter bears no material resemblance" to the particular action at issue in *Weaver*, Motion 14, it does not attempt to explain how the August 11 letter would satisfy the *Weaver* standard. As the district court explained, it does not. *See* Add.60.

**3.** FMCSA also briefly asserts that AFT lacks standing. According to FMCSA, because it "is entitled and able to access [AFT members' licensing records] on an individualized basis," there can be no injury caused by the "aggregate" turnover of these records. Motion 15. To start, while FMCSA faults the district court and AFT for not addressing this argument below, *id.*, FMCSA did not make this argument before the district court in opposing either intervention or the stay motion.

In any event, FMCSA's new argument is unlikely to succeed. FMCSA's current access to CDLIS records is limited: To obtain a record, it must identify a specific individual and submit a query for that individual. Add.75. To conduct such an inquiry, FMCSA personnel must

have "a specific need to know" and comply with the DPPA. *See* 2011 PIA. Further, FMCSA's ability to share CDLIS records with other federal agencies is subject to additional processes and limitations. *See* FMCSA, Policy on Availability of Information from CDLIS, 70 Fed. Reg. 2455 (Jan. 13, 2005).

Here, though, AFT alleges that FMCSA seeks to create a dragnet containing AFT members' personal information—without any particularized need for those individuals' information, in violation of the DPPA, and without the safeguards required by the Privacy Act—and that FMCSA will further share that information *en masse* with DHS without authorization.[2] FMCSA cites no authority for its argument that the fact that it could access specific private personal information for a lawful, authorized reason means that an individual cannot be injured by its obtaining that information for other, unlawful, unauthorized reasons.

FMCSA's argument is inconsistent with this Court's recent *en banc* decision in *AFSCME v. Social Security Administration*, 172 F.4th 361 (4th Cir. 2026). There, the government argued that, because the plaintiffs

[2] For standing purposes, the Court assumes the correctness of AFT's arguments on the merits. *See Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 99 (4th Cir. 2011)

had "no challenge to non-DOGE Social Security Administration employees accessing plaintiffs' members' sensitive personal data," the plaintiffs' "members cannot suffer concrete harm for Article III purposes when DOGE employees do the same." *Id.* at 369–70. This Court rejected that argument, recognizing that the "plaintiffs' merits theory is that DOGE team members—unlike other Social Security Administration employees—are not authorized to access this sensitive personal information, which is what renders such access an unlawful and highly offensive 'intrusion'," and thus creating an Article III injury. *Id.* at 370. Likewise here, it is the *unauthorized* nature of the intrusion on (and use and further dissemination of) AFT's members' personal information that creates an injury—even if that information could have been accessed for other authorized purposes. *See also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921–22 (4th Cir. 2022) (holding that DPPA protects a concrete, "legally cognizable" privacy interest against the unauthorized dissemination of drivers' personal information).

### B. FMCSA is not likely to prevail on its merits arguments.

The district court found that the Data Demand was likely unlawful on multiple grounds, each one of which independently would justify

preliminary relief. FMCSA is not likely to show the district court erred as to any of these holdings, much less all of them, as would be necessary to obtain a reversal on the merits.

**1.** For the reasons stated by the Plaintiff States, and as recognized by the district court, Add.61–62, 65–66; Add.89–90, 94–95, the FMCSA is unlikely to prevail in its appeal as to the statutory consultation requirement and the Spending Clause.

**2.** The district court correctly concluded that FMCSA's "demand that the AAMVA transfer the MPRs would likely violate the DPPA," as the statutory exception that permits nonconsensual disclosure of records "for use by any government agency … in carrying out its functions," 18 U.S.C. § 2721(b)(1), does not apply.

While this Court has not defined the scope of the § 2721(b)(1) exception in a precedential opinion, the Court in *McMichael v. James Island Charter School*, 840 F. App'x 723 (4th Cir. 2020), defined a government agency's "function" as its "intended role." *Id.* at 723, 728–29. As the Court explained, an agency "uses" information to "carry out" such a function only where it "actually makes use of the information [it] obtained, uses it 'for the identified purpose,' and does not 'exceed the

scope of the ... exception.'" *Id.* at 730 (quoting *Senne v. Village of Palatine*, 605 F.3d 597, 606 (7th Cir. 2012)).

Here, despite being asked by AAMVA multiple times to explain how FMCSA would use the requested data, FMCSA provided only vague responses as to how the data would be used to further the agency's intended role. *See* Add.14. The district court was not required to defer to these self-serving conclusory statements or to defer to FMCSA officials' *post hoc* declarations, *see* Motion 17–18, as to possible ways in which they might use the information sought (including one that post-dates the district court's preliminary injunction order). Not only do the statements fail to demonstrate that FMCSA intended to use the MPRs solely for permissible purposes, but "facts and justifications for agency action provided to a reviewing court for the first time are generally not to be considered by the court." *See Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.,* 707 F.3d 462, 468 (4th Cir. 2013).

Vitally, the government does not dispute that one purpose for which FMCSA seeks the MPRs is to turn them over to DHS for immigration enforcement. Immigration enforcement is not FMCSA's "intended role," and obtaining the data for such a use would exceed the scope of the

government-use exception—which allows disclosure to a government agency only for its use in carrying out "*its* functions." 18 U.S.C. § 2721(b)(1) (emphasis added). But when an agency turns protected information over to someone else for the third-party's own purposes, the agency is not itself "using" that information "in carrying out its functions." *See McClatchy Co. v. Town of Chapel Hill*, 657 F. Supp. 3d 769, 777–78 (M.D.N.C. 2023); *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 346–47 (W.D.N.C. 2020). Indeed, "it would be nonsensical to hold that a permissible governmental 'function' under the DPPA is to publicly disclose personal information." *Gaston*, 483 F. Supp. 3d at 346. Since FMCSA seeks disclosure of information to it for reasons *other* than carrying out its own functions, disclosure is not authorized under the DPPA.

**3.** The district court held that "the transfer of the MPRs as demanded in the Data Demand would likely violate" the Privacy Act in three ways. Add.91. First, FMCSA "ha[s] not complied with the Act's notice requirements that FMCSA must satisfy before including new data into a new or newly modified 'system of records.'" *Id.* Second, FMCSA has not "articulate[d] a specific purpose 'required to be accomplished' by

FMCSA that would justify the possession and maintenance of these records." *Id.* (quoting 5 U.S.C. § 552a(e)(1)). And third, FMCSA "intend[s] to transfer the Data to third parties, including other federal agencies, such as DHS, in likely violation of prohibitions against disclosing personal information." *Id.*

As to the first, FMCSA asserts that a 2006 System of Records Notice (SORN) for FMCSA's Electronic Document Management System (EDMS) covers the data it demands here. *See* Motion 18 (citing FMCSA, Notice, Privacy Act of 1974: System of Records, 71 Fed. Reg. 35727, 35727 (June 21, 2006)). That SORN is inapplicable. Its listing of the categories of records to be included in EDMS makes no reference to MPRs or other driver identity records. *Id.* at 35727–28. Rather, it refers to incident-specific records about motor carriers, such as "crash reports," "safety audits," and "driver enforcement case documents" like "notice[s] of claim." *Id.* This SORN would not have been adequate to advise the public that EDMS would be used to host a third-party-sourced data bank of driver identifying information untethered to any incident-specific record, as required under the Privacy Act. *See United States v. Weber*, 816 F. Supp. 3d 1168, 1193–94 (C.D. Cal. 2026) (rejecting the argument that

existing SORNs applied to a new use where it would not "put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity"). If FMCSA plans on storing the MPR data in the EDMS, the Privacy Act would require FMCSA to issue a new notice and provide an opportunity for comment on that proposed new use. *See* 5 U.S.C. § 552a(e)(11).

As to section 552a(e)(1), FMCSA suggests that the court was insufficiently deferential to FMCSA's broad statements as to how obtaining data *en masse* would be useful. *See* Motion 19. But FMCSA cites no authority for the proposition that courts must defer to an agency's determination that the maintenance of records is "relevant and necessary" to accomplish its statutory purposes. 5 U.S.C. § 552a(e)(1). And to do so would render the statutory limitation on agencies' discretion to collect and store data a nullity.

As to the district court's conclusion that FMCSA's plan to re-disclose the information to DHS violated FMCSA's own statutorily mandated policy, FMCSA declares the conclusion "premature." Motion 19. But FMCSA has said that it *will* turn the data over to DHS in bulk

and that existing policy does not allow any other federal agency "to obtain CDLIS records in bulk." Add.91 (citing FMCSA Policy on Availability of Information from CDLIS, 70 Fed. Reg. 2455). That FMCSA has not shared the precise details about its plan to turn over the MPRs does not change its admitted intention.

**4.** FMCSA's attack on the district court's arbitrary-and-capricious holding is similarly based on a boundless view of deference. The district court properly examined the record and explained the many ways in which the Data Demand is likely arbitrary and capricious. *See* Add.64 (discussing FMCSA's inadequate explanation of need for MPRs and failure to consider costs and harms). Most notably, while the Data Demand states that the MPRs were "urgently needed for the federal government to help prevent fatal trucking," Add.26, FMCSA has provided no evidence—in the record or elsewhere—to support its assertion of "urgent need." FMCSA cites the post-preliminary injunction Liberatore Declaration, *see* Motion 23 (citing Add.102–03), but that declaration simply repeats the phrase "urgent need" without offering factual support or explanation of how FMCSA's 38-year lack of access to MPRs has caused a time-sensitive highway-safety crisis. Review under

the APA does not require, or even allow, deference to unsupported assertions.

## III. FMCSA is not likely to suffer irreparable harm.

Although irreparable harm is the *sine qua non* for obtaining a stay pending appeal, FMCSA's motion barely addresses that requirement, instead pointing to FMCSA's unsupported assertion that it has an "urgent need" to "conduct batch queries." Motion 24.[3] As the district court recognized, though, FMCSA has not conducted batch queries in the past 38 years, and it has not attempted to show *how* the lack of batch queries creates harm. This Court thus need not credit FMCSA's unsupported statement.

## IV. The equities weigh against a stay.

Finally, the equities weigh against a stay. Despite FMCSA's contrary assertion, CDL holders like AFT's members had a reasonable expectation that their personal information would be shared with the federal government only in the limited ways authorized by the DPPA and relevant state laws. *See, e.g.*, Texas Dep't of Public Safety, CDL-1 – Texas

---

[3] FMCSA also asserts that the preliminary injunction's purported "overbreadth" "underscor[es] these harms." Motion 24. That assertion is wrong, as explained by the Plaintiff States. It is also irrelevant insofar as FMCSA requests a stay of the section 705 order.

Commercial Driver License Application, https://www.dps.texas.gov/Internetforms/Forms/CDL-1.pdf (stating that the state agency will release social security numbers only where "statutorily authorized by Texas Transportation Code section 521.044," which does not provide for sharing with any federal agency). They had no reason to believe it would be provided to the federal government for the purpose of immigration enforcement. And once the MPRs are transferred to FMCSA—and then onward to DHS—the intrusion on AFT members' privacy rights cannot be undone. To allow the federal government to ignore statutory protections to access 17 million individuals' personal information, without a clear showing that the information is needed for a statutorily authorized purpose, is not in the public interest.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for a stay pending appeal.

Respectfully submitted,

/s/ Adam R. Pulver

Mark Hanna
Murphy Anderson PLLC
1401 K Street NW
Suite 300
Washington, DC 20005

Adam R. Pulver
Nandan M. Joshi
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Plaintiff-Intervenor-Appellee American Federation of Teachers*

November 11, 2026

## CERTIFICATE OF COMPLIANCE

This opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the opposition exempted by Federal Rule of Appellate Procedure 32(f), it contains 5,184 words.

This opposition also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Adam R. Pulver
Adam R. Pulver

## CERTIFICATE OF SERVICE

I hereby certify that, on November 11, 2026, the foregoing was served through the Court's ECF system on counsel for all parties.

/s/ Adam R. Pulver
Adam R. Pulver